1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AVERY RAWLS, | No. CV 08-1084 AJW |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | MEMORANDUM OF DECISION |
| Defendant. | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are not disputed and are recited in the Joint Stipulation. [See JS 2]. Plaintiff alleged that he became disabled on June 12, 2001, due to neck and back pain. [JS 2; see Administrative Record ("AR") 75]. Plaintiff filed an action for judicial review of a prior decision by an Administrative Law Judge ("ALJ") denying benefits. That case resulted in a stipulated remand for further proceedings. [JS 2; AR 320]. On remand, the same ALJ issued a new written hearing decision that constitutes the Commissioner's final decision in this matter. [JS 2; AR 6-19].

1  The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work,
2  but that he required the option of alternating sitting and standing at least every two hours, could
3  climb, balance, stoop, crawl, kneel, or crouch only occasionally, and could not perform vigorous or
4  prolonged neck motions. [AR 10]. The ALJ further found that plaintiff's RFC precluded him from
5  performing his past relevant work, but that plaintiff could perform alternative work. [JS 3; AR 17-
6  19].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**The ALJ's interpretation of the evidence**

Plaintiff contends that the ALJ misinterpreted the limitations assessed by plaintiff's treating orthopedist, Philip A. Sobol, M.D. [See JS 4-13].

Dr. Sobol treated plaintiff for work-related injuries to his neck and back, and he issued reports in his capacity as primary treating physician for use in plaintiff's workers' compensation case. Examination reports also were issued by David B. Pechman, M.D., the Agreed Medical Examiner in plaintiff's workers' compensation case. Citing a "Physical Residual Functional Capacity Questionnaire" signed by Dr. Sobol on July 24, 2007, plaintiff contends that "Dr. Sobel

1 [sic] agreed with the limitations assessed by Dr. Pechman," and that the ALJ misconstrued the
2 opinions of Dr. Sobol and Dr. Pechman as inconsistent when, in fact, Dr. Sobol agreed with Dr.
3 Pechman's assessment that plaintiff was limited to "light work" under the workers' compensation
4 guidelines. [See JS 4-5]. Plaintiff asserts that Dr. Sobol and Dr. Pechman disagreed only as to
5 whether plaintiff was an appropriate candidate for surgery, and that Dr. Pechman did not disbelieve
6 plaintiff's pain complaints, but merely opined that plaintiff's pain symptoms were not likely to be
7 relieved by surgery. Plaintiff further contends that Dr. Pechman assessed a limitation to light work
8 in workers' compensation terminology, and that the ALJ erred in assuming that plaintiff could
9 perform"light work" as defined by the Commissioner without "translating" the workers'
10 compensation terminology. [JS 5]. Plaintiff further contends that even if Dr. Sobol's opinion is
11 inconsistent with that of Dr. Pechman, that inconsistency alone does not justify rejecting Dr. Sobol's
12 treating source opinion. [JS 6-7].

13 Plaintiff is correct that Dr. Sobol explicitly and unequivocally agreed with Dr. Pechman's
14 assessment of plaintiff's work restrictions. In a July 2007 physical RFC assessment form on which
15 Dr. Sobol was asked to describe plaintiff's impairments [AR 479-483], Dr. Sobol stated:

> [Plaintiff's] condition is permanent and stationary. As per the Agreed Medical
> Examiner, Dr. David Pechman, [plaintiff] is in need of permanent work restrictions
> limiting him to a level of activity half-way between light work and heavy work,
> [limiting him] from periods of prolonged weight bearing and from repetitive or
> prolonged posturing of the head and neck. As a result of these restrictions, [plaintiff]
> is physically incapable of returning to his regular job duties as a Driver w/Fedex and
> is in need of voc. rehab.

23 [AR 479]. In response to a question asking him to describe "any other limitations" that would affect
24 plaintiff's ability to work, Dr. Sobol again cited "[t]he permanent work restrictions that were
25 outlined by the Agreed Medical Examiner, Dr. Pechman" as "noted in question #3 on page one of
26 this form." [AR 482]. Asked to identify "the earliest date" those restrictions applied, Dr. Sobol
27 replied, "Dr. Pechman imposed his permanent work restrictions on the patient at the time of his
28 Agreed Medical Examination on 2/13/03." [AR 483]. Dr. Sobol deferred "restrictions from an

1  internal medicine or psychiatric standpoint . . . to the appropriate specialists in these fields . . . ."
2  [AR 483].

3        The ALJ correctly noted that a disagreement previously had arisen between Dr. Sobol and
4  Dr. Pechman when, in January 2004, Dr. Sobol responded to an inquiry "requesting clarification
5  regarding the need for surgical intervention for" plaintiff and recommended that plaintiff undergo
6  surgery that had been denied on the basis of Dr. Pechman's February 2003 report. [AR 381-384].
7  Dr. Sobol opined then that plaintiff's condition had "significantly deteriorated" in the past year,
8  warranting a laminectomy/discectomy at the L3-L4 level, and possibly at the L4-L5 level. [AR 381-
9  382]. After Dr. Sobol made that recommendation, Dr. Pechman was asked to reevaluate plaintiff,
10 and after doing so he concluded that plaintiff's future medical care should "provide for possible
11 laminectomy, discectomy, and/or fusion." [AR 574]. Dr. Pechman opined, however, that a
12 laminectomy/discectomy would not provide complete relief, and that plaintiff's "large component
13 of low back pain" made lumbar fusion a better option, but that fusion surgery was contraindicated
14 at that time due to plaintiff's pack-a-day smoking habit, which increased the odds of fusion
15 nonunion. [AR 14, 574-575].

16       In that reevaluation report, Dr. Pechman listed diagnoses of cervical and lumbosacral
17 discogenic disease. He opined that plaintiff should avoid heavy lifting, prolonged fixed gaze
18 activities, and forceful cervical motions on account of his cervical spine disease, and that plaintiff
19 could perform "midway between no heavy work and light work activities" and "must avoid
20 prolonged standing and walking" due to his lumbar spine impairment. [AR 572].

21       In January 2005, Dr. Sobol responded to a request that he review the most recent medical
22 reports from Dr. Pechman and make a recommendation for a smoking cessation program. [AR 374-
23 378]. Dr. Sobol commented that "Dr. Pechman and I agree that [plaintiff] is a surgical candidate,"
24 and that he was awaiting approval for plaintiff to consult a spine surgeon, Dr. David Rogers. [AR
25 14, 376]. Dr. Sobol added that he agreed with Dr. Pechman that "it is imperative" that plaintiff stop
26 smoking before surgery, and he recommended that plaintiff be provided with a smoking cessation
27 program. [AR 14, 377].

28       Plaintiff was hospitalized for renal failure in December 2005, evidently due to a medication

- 4 -

1 he had been prescribed, but he made a full recovery. [AR 14-15]. In February 2005, plaintiff
2 consulted Dr. Rogers, the spine surgeon. He sent plaintiff for additional imaging studies prior to
3 making a definitive recommendation concerning surgery, but there are no records from Dr. Rogers
4 indicating that plaintiff returned to him after undergoing the recommended CT scan or obtained a
5 final recommendation from Dr. Rogers. [AR 14, 432-452, 590-591].

6       In October 2006, plaintiff was reevaluated by Dr. Pechman, who also noted that plaintiff had
7 stopped smoking but was declining back fusion surgery. Dr. Pechman noted that plaintiff's renal
8 failure increased surgical risk. Dr. Pechman advised "work restrictions at this point [of] light work
9 with no prolonged standing and walking. [Plaintiff] has frequent slight to moderate pain." [AR 562].

10       Plaintiff is correct that Dr. Sobol said that he agreed with the workers' compensation
11 restrictions advised by Dr. Pechman, and that their disagreement was limited to the question of
12 whether surgical intervention was appropriate, and if so, what kind. Plaintiff, however, argues that
13 if the ALJ properly "translated" the restriction to "light work" advised by Dr. Pechman and endorsed
14 by Dr. Sobol, he would be required to find plaintiff disabled. [JS 5-7]. On this point plaintiff's
15 argument goes astray.

16       To begin with, Dr. Pechman did not restrict plaintiff exclusively to "light work" under the
17 workers' compensation guidelines until October 2006. Prior to that, he consistently opined that
18 plaintiff could perform "midway between no heavy work and light work activities" and "must avoid
19 prolonged standing and walking" due to his lumbar spine impairment. [AR 572]. Thus, Dr. Sobol
20 accurately characterized Dr. Pechman's work restrictions when he said he agreed with Dr. Pechman
21 that plaintiff needed permanent work restrictions limiting him to "half-way between light work and
22 heavy work, from periods of prolonged weight bearing [,] and from repetitive or prolonged posturing
23 of the head and neck." [AR 479]. Dr. Sobol also said that he and Dr. Pechman agreed that those
24 restrictions would prevent plaintiff from doing his past work as a FedEx driver, but would not
25 medically prevent plaintiff from undergoing vocational rehabilitation; thus, plaintiff was not totally,
26 permanently disabled. [See AR 483, 562, 573-574].

27       The California workers' compensation guidelines are not directly translatable into social
28 security terms, and they are not controlling in social security cases. The ALJ is entitled, however,

- 5 -

1    to draw inferences logically flowing from the evidence, including workers' compensation ratings.

2    Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); see also Desrosiers v. Sec'y of Health & Human

3    Servs., 846 F.2d 573, 576 (9th Cir. 1988).  Under the California workers' compensation guidelines,

4    a claimant who cannot perform "heavy work" has "lost approximately half of his pre-injury capacity

5    for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other

6    activities involving comparable physical effort."  See Glass v. Workers' Comp. Appeals Bd., 105

7    Cal.App.3d 297, 302 n.1 (1980) (quoting and discussing the "Schedule for Rating Permanent

8    Disabilities Under Provisions of the Labor Code of the State of California" (the "Schedule")).[1]

9    Plaintiff's past work as a semi-truck driver was medium work.  His loss of half of his prior capacity

10    for medium work does not preclude the performance of light work as defined by the Commissioner.

11    See Macri, 93 F.3d at 544 (holding that a worker who had lost half of his pre-injury capacity for

12    lifting and bending under the California workers' compensation guidelines and whose prior job

13    required lifting forty pounds occasionally and twenty-five pounds frequently and constant bending

14    could perform light work).

15         Dr. Pechman limited plaintiff further, however, to a level "midway"  between "heavy work"

16    and "light work," with no "prolonged" weight bearing.  [AR 483]. In workers' compensation

17    parlance, a "disability resulting in a limitation to light work" due to spine and torso impairments

18    "contemplates the individual can do work in a standing or walking position, with a minimum of

19    demand for physical effort." Glass, 105 Cal.App.3d at 302 n.1.  In social security disability terms,

---

[1] The Schedule was revised effective April 1, 1997 and applies to dates of injury on or before December 31, 2004, with certain exceptions not relevant here.  See Administrative Director, Department of Industrial Relations, Division of Workers' Compensation, State of California, "Schedule for Rating Permanent Disabilities" (April 1, 1997) (the "Revised Schedule"); see also Administrative Director, Department of Industrial Relations, Division of Workers' Compensation, State of California, "Schedule for Rating Permanent Disabilities" (January 1, 2005).  Prior to its revision, the Schedule's "Guidelines for Work Capacity" defined work capacity in terms of a preclusion against "very heavy lifting," "very heavy work," "heavy lifting," "repeated bending and stooping," or " heavy work," or in terms of a limitation to "light work," "semi-sedentary work," or "sedentary work". See Glass, 105 Cal.App.3d at 302 n.1. The Revised Schedule defines all of those terms without substantive change, and includes two additional categories of work capacity: a "disability precluding repetitive motions of neck or back," and a "disability precluding substantial work".  See Revised Schedule at 2-14 - 2-15.

light work requires up to six hours a day of standing or walking.[2] In that respect, the definitions of "light work" under the two schemes are similar. The ALJ limited plaintiff to only "occasional" postural activities and added a sit/stand option allowing plaintiff to switch positions at least every two hours. These were logical and reasonable interpretations of a level of activity midway between light and heavy work in workers' compensation terms. Cf. Desrosiers, 846 F.2d at 580 (holding that a claimant who "can perform work that does not require prolonged lifting, bending, stooping, pulling, pushing, or climbing, and does not require the use of his left upper extremity above shoulder level" under the California workers' compensation guidelines has limitations that "place him somewhere between light and sedentary work" as defined by the Commissioner). The ALJ also rationally inferred that a preclusion against "vigorous or prolonged neck motions" would accommodate Dr. Pechman's restrictions regarding plaintiff's cervical spine.

To the extent that Dr. Sobol suggested that plaintiff had additional functional limitations that would preclude even sedentary work, the ALJ properly rejected those limitations as inconsistent with a rational interpretation of Dr. Pechman's opinion, which Dr. Sobol expressly endorsed. Cf. Perez v. Chater, 17 F. Supp.2d 1115, 1124-1125 (C.D. Cal. 1997) (holding that the ALJ could not selectively adopt conclusions expressed by a workers' compensation agreed medical examiner without explaining his rejection of other aspects of the same opinion).[3] In evaluating the

---

[2] "Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. Sitting may occur intermittently during the remaining time. In addition, occasional bending from the waist is required to lift and carry objects. Unlike work at the medium level, frequent bending or stooping is not required for light work. Moreover, limitations in an individual's ability to climb, bend, kneel or crawl will not significantly erode the occupational base at either the light or medium level of exertion. See 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6-*7; SSR 83-10, 1983 WL 31251, at *5-*6; SSR 83-14, 1983 WL 31254, at *4-*5.

[3] For example, elsewhere on the RFC assessment form in which he said he agreed with Dr. Pechman's work restrictions, Dr. Sobol checked or circled answers indicating that plaintiff would need to take from 8 to 12 unscheduled breaks during an 8-hour work day and would have to rest from 5 to 15 minutes each time, creating the possibility that plaintiff would need from 40

- 7 -

significance of the workers' compensation physicians' opinions, the ALJ also permissibly considered (but did not adopt) the opinions of the Commissioner's consultative orthopedist and the medical expert, both of whom opined that plaintiff could perform a range of medium work. [See AR 16-17].

The ALJ drew rational inferences from the opinions of Drs. Sobol and Pechman, and he articulated specific, legitimate reasons supporting his evaluation of the medical opinion evidence. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)(explaining that if contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record).

**Subjective complaints**

Plaintiff argues that the ALJ failed properly to evaluate plaintiff's subjective complaints. [See JS 13-18].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony she considers not credible, she must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony

---

minutes to 3 hours in unscheduled breaks on any given day. [AR 482]. Dr. Sobol said that plaintiff would be absent more than 3 times a month due to his impairments. He indicated that plaintiff would require periods of walking every 15 minutes for 10 minutes each time, meaning that he would need to walk for about 40 minutes an hour, even though he also checked a box saying that plaintiff could stand and walk "less than 2 hours" in an entire 8-hour day. [AR 481]. Dr. Sobol did not explain these internal inconsistencies in his July 2007 assessment.

on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff argues that Dr. Pechman "endorsed" plaintiff's pain complaints, and therefore the ALJ erred in rejecting the alleged severity of plaintiff's pain complaints on the ground that Dr. Pechman remarked that plaintiff "cooperated poorly" during his July 2004 physical examination and gave inconsistent descriptions of the nature and extent of his pain. [JS 14; see AR 17, 572]. Dr. Pechman opined that plaintiff had "[d]iscomfort, constant and slight becoming moderate with heavy lifting, repetitive prolonged vigorous neck motions, and prolonged fixed gaze activities . . . ." [AR 573]. The ALJ, however, did not totally reject plaintiff's subjective complaints. On the contrary, his RFC finding is consistent with Dr. Pechman's observations regarding plaintiff's pain. [AR 16-17].

Plaintiff contends that the ALJ disregarded Dr. Pechman's recommendations for future treatment, which included pain medications, physical therapy, and possibly pain management and fusion surgery. [AR 562]. The possibility that plaintiff might require surgery or more aggressive pain management in the future, however, does not undermine the validity of the ALJ's credibility analysis with respect to the alleged period of disability. The ALJ permissibly noted that in addition to exhibiting poor cooperation with Dr. Pechman, plaintiff's "somewhat bizarre" presentation to the Commissioner's consultative orthopedist made him suspect that plaintiff was magnifying his symptoms. [AR 17, 491-497]. The ALJ also noted plaintiff's reliance on relatively conservative pain treatment measures, including acupuncture and periodic epidural injections [AR 39], as well as objective and clinical findings showing merely mild to moderate pathology of the lumbar and cervical spine. [AR 16]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Therefore, the ALJ articulated specific, legitimate, and convincing reasons

for crediting plaintiff's subjective complaints only to the extent reflected in his RFC finding.

### Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: September 2, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge